## SCHMUTZ v. EMPLOYEES' FIRE INS. CO.
### No. 312.

Circuit Court of Appeals, Second Circuit.
March 15, 1935.

Thomas A. McDonald, of New York City (James A. Gill, of New York City, of counsel), for appellant.

William J. Mahar, of New York City (Edward L. P. O'Connor, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action at law to recover upon a fire insurance policy covering ten barges in New York Harbor; it was for a total of $45,000, "as per Schedule attached," the schedule distributing the gross sum among the ten vessels. It recited that "the property insured hereunder is valued at $45,000" and is the "hull, body, spars, sails and all tackle and apparel, boats, engines, boilers and machinery, fixtures, appurtenances, materials, equipments, fuel, stores, supplies, furniture, ordnance, munitions and artillery on board; also Electric Light and Refrigerating Plants and installation if any." All claims were to be adjusted "in accordance with the terms and conditions of the New York Standard Form of Fire Policy," and the policy was "otherwise subject" to that form. Among the provisions of the New York form are these: "In case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss," the entire policy is to be void. Again the insurer is not to be liable, "while a described building whether intended for occupancy by owner or tenant is vacant or unoccupied beyond a period of ten days."

Eight of the barges were lying at Travis, Staten Island, tied to a dock on the night of April 27, 1933; no bargee was on board of them, or had been for ten days. A fire broke out which totally destroyed two, the Arrow and the Billy, valued at $5,000 each, and injured a third, the Glen, and her gear. These three lay alongside each other at the outer end of the dock. At the shore end lay the other five, in the cabin of one of which, the Hampton, an independent fire was discovered which damaged her and her gear. Part of the equipment of a fifth, the Horan, not herself injured, was some covers, at the time on board the Arrow, and these were burned with that vessel. The total loss was $15,022.35. The fire was certainly set by an incendiary, and the defendant alleged that he was the plaintiff, but the jury found otherwise, and we are not asked to reconsider their verdict on that score. The chief argument on the appeal concerns the proofs of loss. The plaintiff was examined at length by the fire marshal and the district attorney tried unsuccessfully to indict him. He was therefore presumptively aware of the incendiary's preparations discovered on the barges which were not destroyed and that a strong case could be made against him. On November 1, 1933, he filed his proofs of claim in which he swore that "the cause and origin" of the fire was unknown to him; and as to the Horan's covers of the value of $840, declared as follows: "Occupancy: The building described, or containing the property described, was occupied at the time of the fire as follows and for no other purpose

whatever: Derrick Ltr. S. A. Horan." Later his brokers sent a letter to the underwriter in answer to a request for further information about the cost and value of the barges. This had one column entitled "Cost," in which a figure was given as the "Bill of Sale." The bill of sale for the Billy was put at $4,000, and for the Glen at $4,000; the Billy had been valued at $5,000 and the Glen at $4,000. The bill of sale for the Billy was in fact for $2,000, but the plaintiff swore at the trial, and had told the fire marshal before, that it had cost him in all $4,000; the bill of sale for the Glen was one dollar, the plaintiff had said, and swore, that it had cost $3,000.

At the trial the defendant moved for a directed verdict on the ground that the plaintiff had been guilty of "fraud" and "false swearing" in his proofs of claim and elsewhere; and because the barges were unoccupied. The judge, having denied this, charged the jury briefly that "any deliberate false statement of a material fact with the intention to deceive" made by the plaintiff either before or after the policy was written, was a defence, but that the defendant must prove it. Upon request he added that "if the plaintiff represented that certain of the goods or articles involved in this cause of action were on board their respective vessels and such representation were false such misrepresentation avoids the policy," but added that it must be made "with the intention and object of deceiving the company." The defendant excepted to the addition as well as to the judge's refusal to charge several other requests, which, so far as material at all, were no more than variants of the theme that intentional deceit was enough and fraud was not necessary.

The defendant relies especially upon Claflin v. Commonwealth Insurance Co., 110 U. S. 81, 3 S. Ct. 507, 28 L. Ed. 76, which held that in a policy containing a clause like that at bar, any deliberately false statement upon a material matter in a proof of claim was a good defence even though not intended to defraud the underwriter. This was the effect of what the judge said here; he did not tell the jury that the plaintiff must have meant to defraud the defendant; only that he must have deliberately tried to deceive it. Upon that the evidence was not so plain as to justify a directed verdict. We agree that the plaintiff was not entitled to recover for the loss of the Horan's covers which were on board the Arrow. The phrase, "on board," after "munitions and artillery," does not condition those words alone; it goes back at least as far as "fixtures." Conceivably the catalogue was intended to be in four parts: (1) "hull" etc., down to "apparel"; (2) "boats" etc., down to "machinery"; (3) "fixtures" etc., down to "on board"; (4) "Electric Lights" etc., to the end. Such a division would have some justification from the character of the things enumerated, and because of the repeated use of the word "and," as though to complete a clause. If so, it could be argued that "spars, sails, tackle and apparel" were insured though not on board, but not "materials, equipments, supplies or furniture." However, even so covers would not fall under the word "apparel" so well as under "equipments" or "furniture." Taking the phrase as a whole we have no doubt that covers were a part of the gear which must be on board. Indeed it is pretty clear that this must be so, else it would be impossible for the underwriter to limit his risk. He can in some measure calculate this if he has only the barge itself to consider, but if her furniture and equipment may be taken away and kept anywhere, he has no way of knowing his liabilities. But it does not follow, as the defendant supposes, that even so it was a deliberate deceit to make a claim for the Horan's covers. As has just appeared, the clause itself is not wholly free from ambiguity and it was quite possible that the plaintiff thought the phrase referred to the covers as appurtenances of the Horan rather than to their location. His testimony at the trial, far from having a sinister meaning as the defendant asks us to believe, seems quite innocent. It is true that on his direct examination he spoke of the covers as being on the Horan, just as he had in the proofs of claim, but his immediate admission on cross-examination that they were on the Arrow, is not consistent with a purpose to deceive. It does not appear that the defendant knew where the covers had been, or that he need have told the truth if he meant to conceal it. At least the question was one for the jury to decide.

The broker's letter stating the cost of the barges was not "false swearing" even if it was untrue, for it was not sworn to. If it was a defence at all, it was because it was a fraud. Since the policy was "valued" as to all the barges, their cost could be relevant only to cover up fraudulent valuations. As to the Glen this could hardly be true; her cost was given as $4,000 and had been in fact $3,000, but she had had repairs

upon her of $2,000, and she was valued at $4,000. Although the cost of the Billy had been only $2,000, as much more had been put upon her; and she was valued at $5,000. The fire marshal had already learned all these facts and had seen the bills of sale; indeed he had had them at one time in his possession. True, it does not appear that the defendant had learned of this, or if it had, that the plaintiff knew that it had. But the whole affair had been thoroughly aired, and it was permissible for a jury to find both that the letter had not been intended to suppress a fraud, and that there had not been any in fact. Nor is it necessary at length to discuss the argument that the plaintiff swore falsely when he denied knowledge of the cause and origin of the fire. He spoke with six months between him and the fire, during which the matter had been well combed. He denied that he had had any part in it, and perhaps that was false; but it was submitted to the jury and they have agreed with him. The defence must be that though he had not been privy to it, he knew all that the firemen knew and should have disclosed it. This is a most unreal position; it presupposes that he was deliberately keeping from the defendant what was accessible knowledge to any interested person; what the defendant would almost certainly learn from the officials; what probably it already knew. The jury might find that he meant that he knew no more than what was public.

 The last charge is of "unoccupancy" of the barges, there being no bargees on board. It has nothing to stand on except the incorporation of that clause out of the New York standard form which we quoted at the outset. The language does not fit a flotilla of barges moored to a dock, which are not "buildings," and whose bargees are neither "owners" nor "tenants." The underwriter must bear such ambiguities, if they are ambiguities at all. Especially is this true of a policy made up like this one, by the incorporation of another policy drawn for a quite different kind of insurance. It is idle, we know, to protest against the shiftless composition of marine policies as they issue in this port; the underwriters prefer them so and the owners and shippers are either helpless, or indifferent, or both. The amorphous result which so often confuses parties and courts and breeds litigation will no doubt persist, and we must struggle as we can to impose coherence upon conglomerate jargon irresponsibly put together at ran-

dom. But we may and should insist upon the most unsparing use of the canon contra proferentem; that is, upon the underwriter's disclosing a plain path out of the jungle he has made. Certainly the defendant has not done so here.

The judgment will be affirmed if the plaintiff files a remittitur of $840 and interest for the covers on the Horan; otherwise judgment reversed.