Vincent **NARDELLI**, Robert G. Nardelli and William Nardelli, as Claimant-Owners of THE M/V NARCO, Appellants,

v.

**STUYVESANT INSURANCE COMPANY OF NEW YORK**, Appellee.

No. 16763.

United States Court of Appeals Fifth Circuit.

Aug. 19, 1959.

Tuttle, Circuit Judge, dissented.

John Germany, Tampa, Fla., for appellants.

John P. Corcoran, Jr., Tampa, Fla., Douglas D. Batchelor, Miami, Fla., for appellee.

Leonard J. Matteson, New York City, Henry J. Read, New Orleans, La., amicus curiae.

Before RIVES, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

PER CURIAM.

After our denial of its petition for rehearing leave was granted Stuyvesant[a] to file a second petition for rehearing and to enable a brief amicus curiae to be filed

a. The parties are referred to as in the original opinion, 5 Cir., 258 F.2d 718.

Footnote and page references herein are to those in the original opinion.

by the American Institute of Marine Underwriters.[b]

The briefs urge again that Nardelli was not an assured under Clause III(A) (B) (C) and VI, note 5. This is nothing new. Indeed, by answers to topical questions 1, 2 and 3 posed by the Court, at pages 722–723, we so held.

But in attacking our holding that Nardelli had coverage (at least to the extent of the seller's security interest) as charterer under the Running Down Clause, note 3, an entirely new position is taken. Below and on initial submission here, coverage was denied, not because Nardelli was not a charterer, or that the Running Down Clause did not cover him generally as a charterer. It was denied because as to this collision, Wilson, the named Assured, had no personal liability so that the claim was not within the proviso [c] of the Running Down Clause.

■ The Institute, speaking with the persuasive, if not authoritative, voice of one largely responsible for the drafting and promulgation of policy forms, with great candor disavows any such interpretation. The purpose of the proviso is merely to make certain that the liability be that of a shipowner and of a kind generally inhering in the ownership, operation, management and navigation of vessels. If the liability asserted against the charterer is of the kind for which an owner, in like position, would have a liability then the obligation to indemnify the charterer under the Running Down Clause exists.[d] Since a vessel owner, operating the M/V Narco would have a liability for a collision of the kind between M/V Narco and the Lolita, the policy applies if Nardelli was a charterer as used in the Running Down Clause.

This is made doubly clear by the acknowledgment that "the Collision Clause of the AITH 1951 policy form *standing alone* by its terms *insures any charterer* of the insured vessel against collision liability." [e] (emphasis supplied) And to this should be added the equally forthright statements immediately before and after the decisive conclusion set forth above, note d, supra. There it is frankly stated, "We do not believe that this proviso has any bearing on the main question which is whether in view of the specific limitations in the policy as to persons whose interests are covered, a charterer in the position of Nardelli * * * can claim to be insured under the general language of the Collision Clause." [f]

**b.** The amicus curiae brief described the Institute as "a non-profit, voluntary trade association of approximately 150 marine insurance companies, * * *. One of its activities is the preparation * * * of marine insurance policy forms and clauses which it approves and recommends to its member companies for their convenience and use in the writing of such business. The American Institute Time (Hulls) December 1, 1951 form of policy, * * * referred to as the AITH 1951 form * * * and referred to by the Court in its opinion at page 11 [258 F.2d at page 723] is such a form."

Although the brief states that it "is filed only on behalf of the Institute," it states that it also "represents the views and interests of the [American Marine Hull] Syndicate as well." The Syndicate "is an underwriting group of approximately 80 companies, in which members of the Institute participate, engaged in the writing of marine hull insurance business. The Syndicate normally uses the Institute form of hull policy, at present the AITH 1951 form."

**c.** See note 3, last 12 lines at page 721 and quoted at page 724. This clause excludes liability for any claim "by anyone other than the owners of the Vessel * * * in respect of any liability to which the Owners of the Vessel * * * insured, as such would not be subject * * *."

**d.** The brief states, at page 17: "The purpose of this provision is to protect the underwriters in the event that the coverage granted by the Collision Clause extends to any other than the owner, against any liabilities which might arise in respect of the charterer which would be different in type or greater in amount than would have been incurred if the charterer had been in the position of an owner."

**e.** Amicus brief page 5.

**f.** Amicus brief page 17. The proviso relates only to the nature of the liabilities

This brings us to the *new* position. Now liability is denied because it is claimed that the term "charterer," broad enough generally to cover Nardelli and his liability for collision damage, must be restricted to those persons described in Clauses III(A) (B) (C), note 5. The reasoning behind this is quite unusual. The argument starts with provisions of the usual AITH form, admittedly absent here, followed by a transposition of them onto this mixed policy seeking to conglomerate an installment-purchase-property risk policy with hull and marine coverage. It is pointed out that the sweeping undertakings to a charterer in the Running Down Clause are limited in the regular use of the AITH form since that form provides for *termination* (cancellation) of the *whole* policy in the case of a charter not expressly approved by underwriters.[g]

Because this is so in the orthodox use of the Running Down Clause as a part of the AITH 1951 form, it is then argued that such limitations must be imported into this hybrid policy, otherwise the insurer has no means of knowing of the reliability—moral, financial or practical —of these unknown beneficiaries.

■■ But this predicament is not a creature of the law. It is the result of the underwriter's own handiwork, subjecting it to all of the uncertainties inherent in such a process of policy "draftsmanship." Schmutz v. Employees' Fire Ins. Co., 2 Cir., 1935, 76 F.2d 119, 122, 1935 A.M.C. 1067, 1072;

see also Calmar Steamship Corp. v. Scott, 1953, 345 U.S. 427, 432, 73 S.Ct. 739, 97 L.Ed. 1125, 1953 A.M.C. 952. To circumvent its self-made problem, the underwriter insists that Clause III(A) (B) (C) is the equivalent of the missing cancellation provision, note g, of the AITH 1951 form. We cannot agree.

Subparagraphs (A) and (B) of Clause III refer by terms to single interest or double interest and obviously relate to the unique hazards of the installment-sales-lease-purchase arrangement. The term "charterer," used in the Running Down Clause, is not confined to any one of these, and is therefore an extension of insurance to persons other than those mentioned in (A) and (B) provided only that such person is a "charterer." Nor does the 30-day reporting requirement of Clause VI, note 5, and the terms of Clause III(C) extending the policy upon application to cover "for the account of others and not provided for in paragraphs III(A) and (B)" offer any assistance. These terms are a part of the blended policy which states without restriction that "if the * * * Charterers * * * in consequence of the insured vessel being at fault shall become liable to pay * * * damages * * * we, the Underwriter, will pay the Assured *or Charterers* * * *." Note 3. The undertaking is in no way restricted to those charterers as to whom application and notice has been made under Clause III(C) and VI. Nor can this limitation be implied on the analogy of the

for which the underwriter must make good, not the question of who is an additional assured as a "Charterer" under the Running Down Clause. The brief further states: "The final proviso of the Collision Clause is also relevant only after it has been *determined* whether the party claiming under the Collision Clause is otherwise eligible to protection against collision liability under the provisions of that clause."

**g.** This record contains a copy of the AITH 1951 form. Its opening provisions, lines 3–13, provide:

"In the event of any change, voluntary or otherwise, in the ownership of the Vessel or if the Vessel be placed under

new management *or be chartered on a bareboat basis* or requisitioned on that basis, *then, unless the Underwriters agree thereto in writing*, this Policy shall thereupon become cancelled from the time of such change in ownership or management, charter or requisition; * * *. *This insurance shall not inure to the benefit of any such charterer or transferee of the Vessel,* * * *. The foregoing provisions with respect to cancellation in the event of change in ownership or management, charter or requisition shall apply even in the case of insurance 'for account of whom it may concern.'" (Emphasis supplied in amicus brief pages 6–7)

missing AITH provision, note g, supra. That is a cancellation clause of the *whole* coverage. Here Clause VI is not stated in the form of a condition subsequent respecting liabilities covered in the policy. Rather it requires application and 30-day reporting only for coverage *not* provided on the face of the policy. Of course, the face of this policy in the plainest terms states that it is for the benefit of the charterers to whom underwriters will make payments.

Of course, we are dealing with this policy as it comes to us. We are not dealing with the AITH 1951 form whose introductory provisions, note g, are obviously relevant to "charterer" in the Running Down Clause. We allay the apprehensions that "the Institute is concerned because this Court's decision, if unexplained, may be regarded by other courts, or may be cited by counsel, for the proposition that the specific limitations on coverage at the beginning of the policy, which are intended to apply to the entire policy and to preclude claims by unknown and unapproved charterers, are for some reason not applicable to the Collision Clause and do not affect the extent of the coverage of charterers under the general language of that clause." The interpretation of that policy will be for another day unaffected by anything done or not done, said or unsaid in this cause.

█ But while we hold that the briefs, either in the role of amicus curiae or as one taking up the cause as an interested advocate, fail on the points urged, we are of the view that the arguments demonstrate that our original opinion was erroneous in part and should be corrected. In it we applied the proviso, see note *c*, indirectly to allow the charterer to recover only to the extent of the security interest of the "owners," i. e., the named assureds, Gibbs Corporation, C.I.T. Corporation and Robert A. Wilson. From the discussion here, it now appears that once we determine that Clauses III(A) (B) (C) do not restrict the term "charterer" so as to obliterate liability altogether, the proviso does not exclude this claim because Wilson (or the other "owners") had no personal liability. The Running Down Clause extends the insurance to Nardelli as charterer for this collision and up to the full amount of the policy.

To this extent our previous opinion is modified but otherwise the petition for rehearing is denied.

Denied.

TUTTLE, Circuit Judge (dissenting).

With deference I dissent. The effect of the Court's decision here is to hold that where, in a policy of insurance, there is a section (III) entitled "Interests Insured," which section purports to specify those who are beneficiaries of the policy but where there is subsequently in the policy an agreement of indemnity in the event of collision, and where such agreement includes the statement that the underwriters "will pay the assured or charterers," such subsequent provision known as a Collision or Running Down clause enlarges the group of beneficiaries of the policy. This Court held unanimously in the original opinion that none of the provisions of Section III could be construed to cover Nardelli. The opinion of the Court on this motion for rehearing, without modifying that construction, simply construes the Running Down clause of the policy as adding other beneficiaries to those which the parties to the contract agreed would be protected. This, it is to be noted, is done for the benefit of one who was not a party to the contract. I think the class of insured persons, as plainly spelled out under Section III, cannot be enlarged by the addition of the Running Down clause.

I would affirm the judgment of the trial court.