**GULF, COLORADO AND SANTA FE RAILWAY COMPANY, Appellant,**

v.

**COCA–COLA BOTTLING COMPANY OF CLEBURNE, Appellee.**

No. 22408.

United States Court of Appeals
Fifth Circuit.

July 13, 1966.

Rehearing Denied Sept. 12, 1966.

Joe Bruce Cunningham, Hudson, Keltner, Smith & Cunningham, Fort Worth, Tex., for appellant.

H. Hendricks Brown, Brown, Day & Crowley, Fort Worth, Tex., for appellee.

Before JONES, Senior Judge,* and GEWIN and BELL, Circuit Judges.

GEWIN, Circuit Judge.

This appeal from the United States District Court for the Northern District of Texas involves the construction and interpretation of a contract of indemnity between the Gulf, Colorado and Santa Fe Railway Company and the Coca-Cola Bottling Company of Cleburne, Texas. In its genesis this was a three-party lawsuit involving John R. Looper, the plaintiff; Gulf, Colorado and Santa Fe Railway Company, the defendant-appellant and the third-party plaintiff (Railroad); and Coca-Cola Bottling Company, the third-party defendant-appellee (Coca-Cola).

Plaintiff was an employee of the Railroad in its locomotive shops at Cleburne. He filed suit against the Railroad under the Federal Employers' Liability Act, claiming injuries as the result of a fall when he stepped on a Coca-Cola bottle while repairing the interior of a diesel

---

* Of the U.S. Court of Claims, sitting by designation.

locomotive at the Cleburne shops. The District Court allowed the Railroad to file a Third-Party Complaint against Coca-Cola alleging that it was entitled to judgment over against Coca-Cola for the amount of any judgment entered on behalf of the plaintiff Looper against the Railroad by virtue of an indemnity contract entered into between the Railroad and Coca-Cola.

The case was submitted to the jury by general charge and special issues which were decided in favor of the plaintiff, and judgment was entered for the plaintiff against the Railroad in the sum of $3,336.41. No appeal was taken from this portion of the judgment. After the verdict, the Railroad filed a Motion for Judgment against Coca-Cola, and urged the District Court to disregard the findings of the jury in response to Question No. 11. There are five distinct parts of Question No. 11 and the jury found that the plaintiff's fall and injuries did not arise out of any of the following:

(a) The installation of the vending machines and bottle racks by the Coca-Cola Company in the mechanic shops and store department premises;

(b) The operation of the vending machines and bottle racks in such mechanic shops and department store premises;

(c) The presence of the vending machines or bottle racks in the mechanical shops and store department premises;

(d) The dispensing of Coca-Cola from the vending machines and bottle racks in the mechanical shops and store department premises;

(e) The consumption by any person of Coca-Cola from the vending machines and bottle racks in the mechan-

ical shops and store department premises.[1]

The District Court overruled this motion and entered judgment denying recovery to the Railroad against Coca-Cola. It is this portion of the judgment that is now contested on appeal.

The Railroad did not object to the submission of the special issues to the jury which resulted in the finding of the critical facts which it later requested the District Court to disregard. Moreover, it is significant to note that the Railroad and Coca-Cola apparently jointly requested or jointly agreed that the special issues in the form used be submitted to the jury. Nevertheless, in its motion for judgment against Coca-Cola the Railroad alleged:

"The Court should therefore disregard the findings of the jury to question No. 11 as the issues therein submitted are law questions that should be decided by this Honorable Court rather than by the jury."

The only crucial issue before this Court is whether the Railroad is entitled to judgment over against Coca-Cola by virtue of the indemnity contract. The facts and surrounding circumstances presented to us are not disputed, are relatively simple and may be summarized as follows: The accident in question occurred on July 7, 1961. On that date, plaintiff was employed by the Railroad as a sheetmetal worker in its mechanical shops at Cleburne, Texas. This facility is used for the repair, overhaul and maintenance of diesel locomotives and other rolling stock of the railroad. The shops are located within the town of Cleburne and cover a very large area of land.

Shortly after the lunch hour on the date of the accident, plaintiff entered

---

1. In brief the Railroad summarizes these findings as follows:
"That the Plaintiff's fall did not arise out of either the installation of the vending machines and bottle racks by Appellee, the operation of the vending machines and bottle racks by Appellee, the presence of the vending ma- chines and bottle racks installed by Ap- pellee, the dispensing of Coca-Cola from the vending machines and bottle racks installed by Appellee, or the consump- tion by any person of Coca-Cola from the vending machines and bottle racks installed by Appellee."

diesel unit #237-C which had been in the shop for its annual inspection. Many repairs were made on this particular unit, which included painting both inside and out. It was one of the plaintiff's duties to load test this locomotive before it was released to go back on the road. At the time, it was discovered that there was a leak in one of the pipes in the engine room, behind the cab, and plaintiff was entering the unit for the purpose of repairing this leak when he stepped on a Coca-Cola bottle, fell and was injured.

The diesel was on a siding or spur track adjacent to the machine shop outside of the shop buildings, and at the time of plaintiff Looper's fall was located 75 to 100 feet from the nearest Coca-Cola dispensing machine. The dispensing machines were inside the shop buildings. Plaintiff entered the cab of the locomotive and proceeded into the engine room through a door and down a short flight of stairs on the fireman's side of the unit when he stepped on the bottle and fell. The bottle contained no "Coke" and it was warm. There is some testimony indicating that it was partially covered by a rag. The jury found in answer to Question No. 10 that the bottle came from one of the vending machines installed by Coca-Cola.

The vending machines were installed by Coca-Cola under a contract entered into by the parties in September 1954. The key dispute on this appeal involves paragraph 7 wherein it is stated in part:

> "7. Bottler shall and hereby does indemnify and save Buyer harmless from and against any and all liability, claims, damages, costs and expenses of whatsoever character * * * arising out of the installation, maintenance, servicing, operating, presence or removal of the vending machines and bottle racks, or arising out of the dispensing or consumption by any person of Coca-Cola in said mechanical shops and store department premises."

The trial court ruled that the quoted indemnity provision did not cover the accident for which the plaintiff recovered from the Railroad. The Railroad strongly contends that the lower court was in error in its interpretation of the contract.

The contract is before us and it is our duty to interpret its meaning without any presumption in favor of the interpretation given it or the legal conclusions reached by the trial court. Illinois Central Railroad v. Gulf, Mobile & Ohio, 308 F.2d 374 (5 Cir. 1962). Its meaning presents a question of law. But in considering the contract, we cannot interpret it, or determine its true meaning in a vacuum with complete disregard of pertinent facts and surrounding circumstances out of which this litigation arose. In our recent case of American Oil Company v. Hart, 356 F.2d 657 (5 Cir. 1966), we dealt with a similar problem where one of the parties insisted that it was entitled to a third-party interpleader judgment as a matter of law in view of the wording of the indemnity contract there under consideration. We observed that the contention of the party who sought the judgment should be sustained " * * * were contract construction simply a question of simple words." Contrary to the urgent contention of the appellant in *American Oil* we concluded:

> "But any such approach ignores the well accepted, but frequently ignored, principle that the words employed are read in the setting of the parties." (Citing cases)

In reaching our decision in this case we are within the bounds of sound legal principles and fundamental rules of contract construction if we look not only to the actual wording of the contract, but also give consideration to its subject matter, the facts relating to the controversy in issue and the surrounding circumstances, in order to determine the intention of the parties as reflected by the words used. This statement of principle is not materially at variance with the position taken by the Railroad during the entire trial of the case before the jury. Indeed, the Railroad sought a determination of pertinent facts and circumstances when it agreed to the submission to the jury of the issues delineated in Question No. 11 and elicited factual

determinations by the jury in response to the issues framed. The court fully charged the jury as to the issues raised by the pleadings, the pre-trial order, and the evidence presented. The record fails to disclose that there were any objections whatever to the court's charge by any party to the litigation. There are no specifications of error with respect to the charge as given, or with respect to the granting or refusal of special requested instructions. From aught appearing in the record the parties were content to have the jury make the factual determinations necessary to answer the special issues presented to them.[2]

■ Indemnity contracts are considered valid and enforceable under Texas law. Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.S.Ct.1963); Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex.S.Ct.1963); Westinghouse Electric Corp. v. Childs-Bellows, (Tex.Civ.App.1961) 352 S.W.2d 806, writ ref'd. The principles of contract interpretation set forth above are also followed in Texas. In the *Gulf Oil* case the State Supreme Court stated the rule as follows:

"The general rules relating to the construction of contracts are applicable to indemnity contracts. We agree with the statement of the Court of Civil Appeals that, 'In construing contracts we must seek the *intention* of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the *subject matter of the contract and the surrounding facts and circumstances*, not for the purpose of varying or adding to the contract but in order to find out the intention with which words are used." (Emphasis added)

The difficulties and troublesome problems presented in cases of this nature are also recognized in Texas law.[3] See

2. The following excerpts from the court's charge will serve to illustrate the issues which the jury was called upon to decide without objection:

"I will use the term 'cause' in connection with the negligence and contributory negligence, and it has a particular meaning. In this kind of case, when I talk about the cause or the contributing cause in connection with these issues, I mean any act or omission that plays any part, no matter how small, in contributing in any way or manner to the injury or occurrence complained of. It might not be the sole cause, but must be a concurring cause which contributes in some manner, however small, to the production of the injury in question. The 'sole cause' means the only one cause. There can be more than one cause, but there can be only one sole cause."

\* \* \* \* \*

"The railroad says that the plaintiff's fall arose out of one of the following: the installation of the vending machines or bottle racks, the operation of the vending machines, the presence of the vending machines, the dispensing of Coca-Cola from the vending machines, and the consumption by any person of Coca-Cola from the vending machines and bottle racks on the premises of the railroad. So these two ques-

tions, [special issues No. 10 and 11] one of them with five sub-divisions, give you the controversy between the Santa Fe Railway Company and the Coca-Cola Bottling Company of Cleburne."

\* \* \* \* \*

"In connection with the controversy between Coca-Cola Bottling Company and the Railroad, the burden of proof is on the Railroad to establish an affirmative answer to each one of those questions presenting the issues between them."

\* \* \* \* \*

"Now, although the defendant railroad was under the duty to exercise ordinary care for the safety of its employees, including the plaintiffs, the defendant was not an insuror of the safety of the employees and the mere fact he was hurt while he was on the job does not mean he is entitled to recover. That is the reason these questions are asked you like they are, is to determine where the fault lay in order that we can fix the responsibility."

3. The following is also from the opinion in the *Gulf Oil* case:
"Indemnity contracts involving the negligence of one of the contracting parties may present troublesome problems of construction. But, as is the case

American Agric. Chem. Co. v. Tampa Armature Works, 315 F.2d 856 (5 Cir. 1963) f. n. 8 at p. 862 (concurring opinion).

█ Giving consideration, therefore, to the facts found by the jury in answer to the several parts of Question 11,[4] which are supported by substantial evidence or lawful inferences drawn from the evidence considered in its entirety, the surrounding circumstances, the situation of the parties, the subject matter of the contract which is in controversy and the intention of the parties as reflected by the words contained in the contract, we have reached the conclusion that the contentions of the Railroad are without merit and the judgment must be affirmed.

Judgment affirmed.

of all contract problems, difficulties may be avoided by the use of definite specific language stating whether or not the negligence of one of the contracting parties is embraced within the indemnity provisions."

4. Other findings of the jury may be summarized as follows: The plaintiff was injured and a contributing cause was the failure of the Railroad to provide him with a safe place to work by permitting the bottle to be on the floor of the locomotive; the Railroad was negligent; such negligence was a cause of the plaintiff's injuries; the repair shop, yards and locomotive in question were under the exclusive possession and control of the Railroad or its employees; the plaintiff would not have been injured except for the negligence on the part of the Railroad or its employees; the plaintiff Looper was also guilty of negligence which was a contributing cause of his injuries; and the percentage of the plaintiff's negligence was 65%.