**MOTOR VEHICLE CASUALTY COMPANY, Appellant,**

v.

**ATLANTIC NATIONAL INSURANCE COMPANY, Appellee.**

No. 22292.

United States Court of Appeals
Fifth Circuit.

March 14, 1967.

Robert M. Sturrup, Anthony Reinert, Dean & Adams, Miami, Fla., for appellant.

William M. Hoeveler, Knight, Underwood, Peters, Hoeveler & Pickle, Miami, Fla., for appellee.

Before MARIS,* BROWN and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

█ In an ancient çase, now rounding out a near decade, we have to determine who picks up the pieces under Florida contract law [1] between two parties who never knew each other or, for all that appears, ever wanted to have anything to do with each other. That prologue introduces, of course, another of the familiar [2] intramural disputes between two insurers, one of whom puts on the appealing garb of an animate assured, cf. Float-Away Door Co. v. Continental Cas. Co., 5 Cir., 1966, 372 F.2d 701, and see opinion denying petition for rehearing, at page 709 [No. 22879, December 1, 1966], to force on its brother underwriter a liberal construction of a kind it would normally repel. American Fid. & Cas. Co. v. St. Paul Mercury Indem. Co., 5 Cir., 1957, 248 F.2d 509, 510; Maryland Cas. Co. v. Southern Farm Bureau Cas. Ins. Co., 5 Cir., 1956, 235 F.2d 679. About the only odd twist in the routine is that the Insurer seeking "liberal" construction does so to avoid pursuit, not, as would its vicarious animate counterpart, to effect recovery.

The District Court, construing the policies, held that each in effect contained an "excess" other insurance clause thus requiring proration. We affirm.

The setting, nearly always uncomplicated and all but forgotten as the controversy makes a hydramatic shift from tort to contract, is certainly simple here. Ronan, vacationing in the sunshine of Florida, rented a car from No. 1, Hertz, who tried, there being no real question whether hard enough, to obtain coverage for itself and its client drivers from Atlantic.[3] Ronan had an accident. He and Hertz were sued and a judgment slightly in excess of the policy limits was entered on a jury verdict against both. Atlantic, insuring Hertz and by definition its client users, under a policy having the unlikely title of "Driverless Car Liability Policy" paid off. Now, in effect, No. 1 looks for a No. 2, or for that matter any

---

* Of the Third Circuit, sitting by designation.

1. As with two recent cases, the issue, while purely one of Florida law, is neither intricate nor repetitive enough to warrant a *Clay*-type referral to the Supreme Court of Florida. Hamilton v. Maryland Cas. Co., 5 Cir., 1966, 368 F.2d 768; Greer v. Associated Indem. Corp., 5 Cir., 1967, 371 F.2d 29.

2. Risjord, 1964–1965 Highlights of Automobile Liability Insurance Law, 16 Fed. mobile Liability Insurance Law, 16 Fed. Ins. Counsel Quar., Winter, 1965–1966, p. 16; Hamilton v. Maryland Cas. Co., 5 Cir., 1966, 368 F.2d 768 [No. 22833, Nov. 17, 1966].

3. Atlantic National Insurance Company, then a wholly owned subsidiary of the Hertz Corporation. It subsequently merged into Hertz August 1, 1963, so that Hertz is literally and figuratively in the driver's seat.

lesser number or fraction thereof as it seeks to pass off half of this loss onto Motor Casualty,[4] the insurer of the client-driver Ronan.

■ The share the wealth, or more accurately, share the burden, theory was also simple. It rested on the assumption that each of the policies contained an "excess" other insurance clause which, indeed, Motor Casualty [5] did as to rented vehicles, and Atlantic [6] had at one time. With two excess clauses, the law steps in, apparently abhoring a stalemate as much as nature abhors a vacuum, to pronounce the dubious fiat that, of all things,

the parties *intended* by such exculpatory language to pick up a liability verbally excluded so that what was "excess" becomes pro rata.[7] But simple as it is, the theory collapses if in one policy there is neither an "excess" clause or any like "other insurance" clause to match against a second policy having an "excess" clause.[8]

And here is where the controversy centers. For the Atlantic policy with its six printed pages and another fourteen of endorsements, riders, and assorted attachments reminiscent of *Ocean Accident*,[9] the lamentations of Judge

4. Motor Vehicle Casualty Company. This was a Family Automobile Policy; see Risjord & Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix; Hamilton v. Maryland Cas. Co., supra.

5. The "Other Insurance" clause is:
 "Other Insurance.
 "If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

6. The "Other Insurance" clause in the printed Atlantic policy is:
 Condition 17. "Other Insurance.
 "The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise."

7. Both litigants accept the proposition that in an *Erie* way for Florida we have so decided. Factory Mut. Liab. Ins. Co. v. Continental Cas. Co., 5 Cir., 1959, (Fla.), 267 F.2d 818; doing so, we put our imprimatur on Judge Choate's earlier decision, Continental Cas. Co. v. St. Paul Mercury Fire & Marine Ins. Co., D.C. Fla., 1958, 163 F.Supp. 325. The result is obviously a fair one, but it is unrealistic to think of it in terms of a volitional "intention" of the parties rather than a public policy determination, as it most certain-

ly is, by the Courts, or the *Erie*-bound Federal Courts, of such state. See American Agricultural Chem. Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856, 861 (concurring opinion), and Hamilton v. Maryland Cas. Co., supra, 368 F.2d 768 at 769 and note 4 [No. 22833, Nov. 17, 1966].
 Here both Atlantic and Motor Casualty policies had identical policy limits.

8. The parties cite and apparently acquiesce in Auto Owners Ins. Co. v. Palm Beach County, Fla.App., 1963, 157 So.2d 820, which approved and quoted extensively from Continental Cas. Co. v. Buckeye Union Cas. Co., Ohio Com.Pl., 1957, 143 N.E.2d 169.

9. Ocean Acc. and Guar. Corp. v. Aconomy Erectors, Inc., 7 Cir., 1955, 224 F.2d 242, 247. Judge Schnackenberg wraps it up this way:
 "The true meaning of the policy is difficult to determine. An examination of it involves a physical effort of no mean proportions. Starting out with three printed pages, the first of which consists largely of a form which is filled in on a typewriter, the reader is confronted also with six physically attached supplements, or riders, inconveniently assorted into different sizes. If he is possessed of reasonable physical dexterity, coupled with average mental capacity, he may then attempt to integrate and harmonize the dubious meanings to be found in this not inconsiderable package. A confused attempt to set forth an insuring agreement is later assailed by such a bewildering array of exclusions, definitions and conditions, that the result is confounding almost to the point of unintelligibleness."

Hand,[10] and the sighs of Justice Frankfurter [11] has an endorsement which amends the "Other Insurance" clause (note 6, supra). The question is whether the endorsement amends former Clause 17 generally to be a complete substitute for it as it literally states or whether it amends it solely as to operations in Maryland.[12]

Whatever else might be said, two things do seem clear in this unclear endorsement. The first is that as to some circumstances a pro rata insurance clause is substituted for an excess clause. Second, some special provision is made with respect to Hertz' operations conducted in the State of Maryland. From that point on, however, what we said in Travelers Indemnity Co. v. Holman is certainly appropriate here: "Divining the underwriter's intent from these contradictory agglutinations is, of course, no easy

matter. If errors occur, Judges perhaps may indulge a little comfort from the fact that, not really of their own making, they come from what loosely may be called loose draftsmanship." 5 Cir., 1964, 330 F.2d 142, 147. See also Nardelli v. Stuyvesant Ins. Co., 5 Cir., 1959, 269 F.2d 592, 594.

■ For natural reasons, Motor Casualty urges strict literalness here. Liberality of construction sought by it holds the Insurer to the letter of the bond. This approach is structured on the proposition that the prefatory statement "is amended to read" substitutes the clause for all purposes and to all situations in lieu of that in the original printed form. Motor Casualty draws its strongest analogy from cases involving legislative enactments in which the usual rule seems to be that the effect of this prefatory phrase is to substitute the new

10. "The underwriter must bear such ambiguities, if they are ambiguities at all. Especially is this true of a policy made up like this one, by the incorporation of another policy drawn for a quite different kind of insurance. It is idle, we know, to protest against the shiftless composition of marine policies as they issue in this port; the underwriters prefer them so and the owners and shippers are either helpless, or indifferent, or both. The amorphous result which so often confuses parties and courts and breeds litigation will no doubt persist, and we must struggle as we can to impose coherence upon conglomerate jargon irresponsibly put together at random. But we may and should insist upon the most unsparing use of the canon contra proferentem; that is, upon the underwriter's disclosing a plain path out of the jungle he has made." Schmutz v. Employees' Fire Ins. Co., 2 Cir., 1935, 76 F.2d 119, 122.

11. "Construing such conglomerate provisions requires a skill not unlike that called for in the decipherment of obscure palimpsest texts. A judicial sigh recently uttered at the seat of Lloyd's evokes a sympathetic echo. 'Freight insurance entered into on the old form of marine insurance policy with deletions or additions to adapt the form to the intended contract [has] almost invariably given rise to difficulties, and the present case [is] no exception.' Mr. Justice Sellers in Atlantic Maritime Co. v. Gibbon, [1

All ER 893, 899] Law Report, March 16, 1953, The Times, March 17, p. 11 [(Eng) [1953] 2 West LR 725]. One envies not merely the perceptiveness of Lord Mansfield in matters of commercial law but his genial means of informing himself. We cannot resort to the elastic procedure by which Mansfield sought enlightenment at dinners with 'knowing and considerable merchants,' nor have we any Elder Brethren of Trinity House to help us." [footnotes omitted] Calmar Steamship Corp. v. Scott, 1953, 345 U.S. 427, 432, 73 S.Ct. 739, 742, 97 L.Ed. 1125.

We have had to deal with this too. See Tropical Marine Prod., Inc. v. Birmingham Fire Ins. Co., 5 Cir., 1957, 247 F.2d 116, 118; Saskatchewan Govt. Ins. Office v. Spot Pack, Inc., 5 Cir., 1957, 242 F.2d 385.

12. Endorsement No. 2 is:
"It is agreed that Condition 17, Other Insurance, of the policy is amended to read:
"17. Other Insurance. If the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limits of liability of all valid and collectible insurance against such loss. But only as respects the assured's operations in the State of Maryland."

enactment for the original act or section. Only those provisions of the original act or section repeated in the amendment are retained.[13]

 If this were all, there would be much difficulty in rejecting Motor Casualty's appeal to literalism. But when it is borne in mind that under basic principles of contract construction, the meaning and application of plain words used is to be judged in the situation in which the parties were placed at the time of making the agreement,[14] it is clearly evident that literalism would here produce a result that makes no or little sense. And a Court ought always, we suppose, to hesitate a little bit at least before making a pronouncement that the parties *intended* a senseless result.

The uncontradicted record shows here that the particular policy covering the period from January 1, 1958, to January 1, 1959, was simply a replacement policy for the one initially procured in July 1956 and successively renewed or replaced each year. Presumably required by virtue of Maryland laws respecting automobile financial responsibility insurance laws, Hertz as a renter of automobiles to the public had to secure approval of its liability insurance program by the State Insurance Department of Maryland. On the submission of the initial policies in 1956 [15] the Insurance Department refused to "approve these policies * * * [since] they do not meet the requirements of the financial responsibility law of this state" because of the presence in the policy of the "excess" Other Insurance clause, Condition No. 17 (note 6, supra). Subsequently the Insurance Department approved the proposed endorsement in the exact language now used (note 12, supra). and the policies with this endorsement were thereafter formally approved.

Two things serve to narrow this endorsement's effectiveness to Maryland operations. First is the fact that by policy definition, the coverage was extended nationwide. Second, by numerous endorsements specifying by name various cities in various states with the specific scheduled premium rate per mile covering not less than 16 states and expected to generate an annual premium of $253,045.75, it is clear that as between Atlantic and Hertz—the only parties to this contract—the policy was intended to cover actual operations scattered throughout the nation. There is nothing to indicate that, in order to meet the specific localized objection of the insuring authorities of Maryland, there was either any occasion for, or desirability in, modifying the contract as to non-Maryland activity. Third, and equally important, if it were intended that the new "substituted" clause was to apply nationwide, no meaning or purpose whatsoever can be found for the tag line "But only as respects the assured's operations in the State of Maryland" which with poor syntax and bad grammar is found verbless at the tail end of the endorsement (note 12, supra).

13. Motor Casualty stresses 1 Southland, Statutory Construction 420–21 (3d ed.) ; Crawford, Statutory Construction 619–20 ; and these cases as typical: Arkansas Railroad Commission v. Stout Lumber Co., 1923, 161 Ark. 164, 255 S.W. 912 ; United States v. Baker, D.C.Pa., 1960, 189 F.Supp. 796, aff'd 3 Cir., 1961, 293 F.2d 613, cert. denied, 1961, 368 U.S. 914, 82 S.Ct. 195, 7 L.Ed.2d 132.

14. "[Amoco] insists that the words of the indemnity clause * * *, being substantially identical, compel an identical result. And so it would, were contract construction simply a question of simple words.

"But any such approach ignores the well accepted, but frequently ignored, principle that the words employed are read in the setting of the parties." American Oil Co. v. Hart, 5 Cir., 1966, 356 F.2d 657, 659 and cases cited n. 6 ; Travelers Indem. Co. v. Holman, 5 Cir., 1964, 330 F.2d 142, 149 ; Gulf, C. & S. F. Ry. Co. v. Coca Cola Bottling Co., 5 Cir., 1966, 363 F.2d 465, 467.

15. Listed in the Insurance Department's letter captions as: Driverless Car Liability Policy, M3625B and M3613B.

When the Court puts itself in the position of the parties faced with the need for nationwide coverage, but which is acceptable to Maryland only upon a specific modification, this series of words in this incomplete sentence is obviously a limiting part of the clause either in the prefatory phrase or within the amended condition 17 itself.[16] At this point several things must be kept sharply in mind. Motor Casualty does have standing, as one in the shoes of its Assured Ronan, to assert whatever rights he (Ronan) has. These include his rights as an additional assured under the Atlantic policy. And granting that as such an additional assured Ronan can invoke the plea of "liberality" in policy construction, the fact remains that at the time the contract was made there were but two parties—(1) Hertz and (2) Atlantic. The yet unknown, undeterminable additional assureds played no part. Their "intention" was unknown, unimportant and unexpressed. The intention, so far as it can be ascertained, of the parties is confined to the two alone. It was their needs, their setting, their words in that setting from which the law draws meaning. And Ronan's or Motor Casualty's right to invoke liberal construction can never alter that. American Fid. & Cas. Co. v. St. Paul Mercury Indem. Co., 5 Cir., 1957, 248 F.2d 509, 515; cf. Float-Away Door Co. v. Continental Cas. Co., 5 Cir., 1966, 372 F.2d 701, nn. 3–7 and related text [No. 22879, Dec. 1, 1966].

Whether fictionalized in the notion of what the parties to the contract really intended—on a matter on which, of course, they had probably not the slightest awareness at the time—or, perhaps more realistically, in terms of what the law concludes they must have expected, this construction enables the parties to meet the problem at hand in Maryland *without disturbing the arrangement for the other operations across the country.* Sense and common sense, law and common sense, sense and the needs of the parties coincide. In keeping with all of the other canons of contract construction, this surely should be a desirable goal.

Affirmed.

---

16. As shown by the italicized tag line, it may be readily transplanted in at least three ways to tie it to Maryland:

(a) In one situation it is in the prefatory phrase:

"It is agreed that *only as respects the assured's operations in the State of Maryland* Condition 17, other insurance, of the policies amended to read: * * *."

(b) In another it would be in the body of the clause:

"It is agreed that Condition 17, Other Insurance, of the policies is amended to read:

"17. Other Insurance. *As respects the assured's operations in the State of Maryland only,* if the insured has other insurance * * *."

(c) In another it might be the concluding sentence of the clause:

"But this amendment applies *only as respects the assured's operations in the State of Maryland.*"