FIDELITY AND CASUALTY COMPANY OF NEW YORK, Plaintiff,

v.

Corbett Garfield JACKSON, James Edward Floyd and Leonard Britt, Administrator of the Estate of James Howard Britt, Deceased, Defendants.

Civ. A. No. 586.

United States District Court
E. D. North Carolina,
Fayetteville Division.

June 5, 1961.

432

Teague, Johnson & Patterson, Raleigh, N. C., for plaintiff.

L. J. Britt and Son, Lumberton, N. C., for Corbett G. Jackson.

Watts & Gardner, Lumberton, N. C., for James Edward Floyd and Leonard Britt, Admr.

WALTER E. HOFFMAN, District Judge.

In this proceeding by way of declaratory judgment, plaintiff seeks the entry of an order declaring and adjudicating that plaintiff is not obligated under the terms of a certain contract of insurance issued by plaintiff to the defendant, Corbett Garfield Jackson, to extend coverage, defend any action, or otherwise pay any judgment or claim, arising out of an accident occurring on December 27, 1958, in Robeson County, North Carolina. The accident resulted in the death of James Howard Britt and injuries to James Edward Floyd.

Jackson was, at the time and place of said accident, operating a 1956 Ford automobile owned by his mother-in-law, Addie Cox. This vehicle was insured under the minimum coverage provisions, commonly referred to as a 5/10/5 policy, as required by the laws of the State of North Carolina. The plaintiff was *not* the insurance carrier on the automobile owned by Addie Cox; said policy having been issued by North River Insurance Company.

On the date of the accident there was in effect an automobile liability insurance policy issued by plaintiff to the defendant, Jackson, covering a 1958 Pontiac automobile, owned by Corbett Garfield Jackson. The coverage extended under this policy provided for a maximum liability of $10,000 for death or bodily injury as to each person, with a maximum liability of $20,000 as to each occurrence. This policy likewise contained a limit of liability to the extent of $2,000 for medical payments made for the account of each person. The 1958 Pontiac was not involved in the accident and, on the day in question, was being driven by the wife of Corbett Garfield Jackson.

While the defendants dispute the ultimate question, it is admitted that Jackson, his wife, and two children, lived in the same house with Jackson's mother-in-law, Addie Cox, at the time of the accident. They were, under the facts of this case, members of the same household. The defendants argue that the Jackson family merely lived in the same house with Mrs. Cox and that, since the three adults had separate incomes, they were not members of the same household. There is no merit to this argument. The Jackson family has lived with Mrs. Cox since shortly after June 1, 1954; no specific rental was paid but Jackson and his wife furnished the lights, water and groceries; they ate at the same table approximately three times each week, this limitation being due largely to the fact that Jackson worked nights and his wife was employed in the daytime. At all times they maintained the same family circle. We are not presented with the difficulties surrounding the interpretation of the word "household" in situations involving families living in

separate sections of the same house. Hoff v. Hoff, 132 Pa.Super. 431, 1 A.2d 506; Jackson v. State Farm Mut. Auto Ins. Co., La.App., 32 So.2d 52. The term "household" is customarily used to mean a number of persons who dwell together as a family but not necessarily under a common roof. State Farm Mut. Automobile Ins. Co. v. James, 4 Cir., 80 F.2d 802; Mazzilli v. Acc. & Cas. Ins. Co., N. J., 170 A.2d 800. The Jacksons and Mrs. Cox lived together as a family and they were one household.

■ Plaintiff paid certain medical payments under Coverage "C" of said policy. Disagreeing with defendants that such action now estops plaintiff from denying coverage for bodily injury liability, it is abundantly clear that the medical payment provision under the family policy is the full equivalent of automobile accident insurance for the assured and his family. The afforded coverage specifically includes protection for medical payments to the occupants of the automobile driven by Jackson and owned by Addie Cox. No estoppel can be created under such circumstances.

The crux of this case lies in the wording of the policy issued by the plaintiff to Jackson, with particular reference to the interpretation of the word "relative". Under Coverage A—Bodily Injury Liability—the named insured (Jackson) is expressly covered with respect to a *non-owned* automobile. Turning to the "Definitions", we find the following language: " 'non-owned' automobile means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile." This definition apparently restricts the coverage afforded to the named insured by eliminating the protection previously extended to a non-owned automobile when owned by "any relative."

The policy similarly defines the word "relative" to mean "a relative of the named insured who is a resident of the same household."

Plaintiff concedes in argument that coverage would extend to Jackson if he had not been "a resident of the same household" with Addie Cox. But, plaintiff argues, the purpose of defining the word "relative" was to prohibit relatives by consanguinity or affinity from obtaining insurance protection for two automobiles in the same household by the simple procedure of paying one premium on one automobile. To hold otherwise, plaintiff argues, would permit the named insured to operate with impunity the non-insured vehicle, while the remaining relatives in the same household would be protected in driving the insured vehicle with the express or implied permission of the named insured.

Defendants rely upon Preferred Accident Ins. Co. of New York v. Onali, 8 Cir., 125 F.2d 580, 582, in which the initial policy contained an exclusionary provision eliminating any obligation of the assured on account of the injury or death of "any relative." A later exclusion clause effective as of the date of the accident resulting in injuries to the assured's sister-in-law, eliminated coverage "for * * * bodily injury to or death of an insured or to any of the following relatives of any person insured hereunder: husband or wife; child or children; father or mother; brother or sister, or father-in-law or mother-in-law." Quite properly the Court concluded that since a sister-in-law was not one of the parties listed under "the following relatives," the insurance company was required to defend under its policy issued to Onali. The Court went further, however, and held that, even if the original exclusion clause was applicable, a reasonable and proper interpretation of the word "relative" did not include a sister-in-law. Adopting the strict rule of construction, the Eighth Circuit pointedly suggested that the word "relative" as used in a policy prepared by the insurance company means "one allied by blood" and, therefore, a sister-in-law was not a "relative."

■ The policy in the present case purports to define the word "relative." It is said to mean "a relative of the named insured who is a resident of the

same household." Does this language alter the rule announced in Onali and thereby include relatives by affinity? Does it mean, as plaintiff asserts, that even a forty-second cousin by marriage, if living within the same household, is a "relative"? Where is the line to be drawn? Should we accept the usual dictionary definition which includes those connected by affinity, or should we turn to the interpretation of the word "relative" as used in wills, conveyances, etc.? In the absence of a clearly manifested contrary intention when used in the latter category, the word "relative" is restricted to those by consanguinity and excludes those by affinity. Cooney v. Cooper, 8 Cir., 143 F.2d 312.

■ Faced with this problem we turn to the general principle that if an exclusionary clause is susceptible of two constructions, it should be construed most strongly in favor of the policyholder. Strictly speaking, the clauses under consideration do not fall within the "Exclusions," but they were designed to accomplish the same purpose and should be governed by the same rules of construction. The policy is so worded as to require the services of an attorney—and a capable one at that—to interpret the various "Definitions" which are tantamount to "Exclusions." In Ransom v. Fidelity & Casualty Co. of N. Y., 250 N.C. 60, 108 S.E.2d 22, it is said that the usual rules of construction regarding any type of contract apply to the interpretation of a substituted automobile provision in a liability insurance policy. If ambiguity presents a choice of interpretations which otherwise would be even, as to resolving it in favor of the insurer or the insured, the propriety of giving effect to the purpose of the contract to give protection to the insured tips the scales in his favor and calls for a construction against the insurer. National Bank v. Insurance Co., 95 U.S. 673, 24 L.Ed. 563; Kendrick v. Mutual Ben. Life Ins. Co., 124 N.C. 315, 32 S.E. 728; Womack v. Federal Life Ins. Co., 206 N.C. 445, 174 S.E. 313.

■ It may sound a bit strange to say that son-in-law and mother-in-law are not "relatives" when we know that, used generically, they are related by affinity. Indeed, there are many related by affinity who are bound by a closer tie of affection than to certain remote blood relatives. However, the insurance company, in drafting the provisions of the policy, could readily have inserted the words "by consanguinity or affinity" after the word "relative" in the definition. Such an addition would have left no room for argument. There are many perplexing situations which could arise by reason of the wording as it existed in the policy issued to Jackson. If it was the intention to include *all* relatives by consanguinity *or* affinity, irrespective of how distantly related, then the policy should have so stated. It may well be that insurance companies have deliberately failed to mention that no coverage is afforded to an insured when driving the automobile of a distant relative through marriage—even though living in the same household. Such a provision, if known, may tend to restrict sales. The trend has surely been to liberalize the coverage. Even in this case the policy issued by plaintiff presumably becomes effective as "other insurance" as to the excess over and above the primary coverage afforded by the policy issued by North River Insurance Company to Addie Cox. We cannot rely upon what the insurance company intended as, in fact, the purpose of excluding coverage to an insured operating a relative's automobile, when living in the same household, was to avoid the perpetration of a fraud in effectively owning two motor vehicles and maintaining the insurance upon only one of said automobiles. Under the facts here presented, both automobiles were insured and the purpose of the exclusion fails.

In the absence of a controlling North Carolina decision, we are persuaded by the reasoning in Onali. If we are to follow the narrow definition of the word "relative" and the strict rule of construction, the plaintiff's case must fall and

there remains an obligation to defend under the policy. On the other hand, if we accept the modern-day, more common-sense meaning of the word "relative" as defined in the latest dictionaries, we arrive at the conclusion that plaintiff must prevail. Torn between these choices, the final decision turns upon Onali and the accepted rule of construction in related matters arising under contracts of insurance.

By reason of the foregoing, it becomes unnecessary to consider the defendants' contention that the controverted clause is repugnant to the North Carolina Financial Responsibility Act of 1957.

Counsel for defendants will prepare and present, after first transmitting to counsel for plaintiff for inspection and endorsement, a final judgment order dismissing plaintiff's complaint and declaring that plaintiff is obligated to defend, within the limits of the policy, the defendant, Jackson, in any action instituted or now pending, by reason of the accident occurring on December 27, 1958, in Robeson County, North Carolina.