RANDALL INSURANCE AGENCY, INC., APPELLEE, *v.* BURNS ET AL., APPELLEES; THE LUMBERMENS MUTUAL INSURANCE CO., APPELLANT.

398

(No. 775—Decided November 29, 1961.)

*Messrs. Marchal & Marchal*, for plaintiff-appellee.
*Messrs. Spidel, Staley & Hole* and *Mr. Thomas C. Hanes*, for defendant-appellee.
*Messrs. Smith & Schnacke* and *Mr. James T. Lynn, Jr.*, for appellant.

SHERER, J. This matter is before this court on an appeal on questions of law from a judgment rendered by the Common Pleas Court of Darke County, Ohio. Plaintiff-appellee recovered a judgment against one Tommy Burns for $466 plus interest and costs, for damages to its automobile. Plaintiff-appellee then filed a supplemental petition against The Lumbermens Mutual Insurance Company, defendant-appellant herein, and Auto Owners Mutual Insurance Company, defendant-appellee herein, to recover the amount of its judgment against Burns.

The facts, briefly, are that:

On January 15, 1960, Donald and Eleanor Hayes, husband and wife, of Brookville, Ohio, and Tommy Burns, the son of Mrs. Hayes by a prior marriage, went to the automobile sales room of Lee Miller, Pontiac Agency at Brookville, Montgomery County, Ohio, to purchase an automobile.

The Hayes' chose a 1957 Pontiac titled in Lee Miller, the Pontiac dealer, and agreed to buy it. They traded in on the purchase price a 1954 Ford. The difference, after allowing the trade-in, was $1,453.

The 15th of January, 1960, fell on a Friday. The Hayes,' as shown by the bill of exceptions, that evening, on said date, paid the sum of $1,353 in cash on the purchase price, the remaining $100 being carried on an open account. At that time, Miller signed the assignment on the certificate of title on the back of the yellow certificate of title form as prescribed by the Revised Code of Ohio (Section 4505.07) as the assigning owner, the Hayes' having indicated to Miller that they wanted Mrs. Hayes to be the title owner. Mrs. Hayes then signed the application for certificate of title on the back of the certificate and Miller

informed them that he would make application to the Clerk of Courts of Montgomery County, Ohio, for a new certificate of title to be issued. After the foregoing had taken place, Burns drove the automobile from the premises of Miller, the Pontiac dealer. The title was transferred on Monday, January 18, 1960.

Shortly after midnight, Saturday, on the 17th day of January 1960, Burns struck and damaged the parked vehicle of the plaintiff in Greenville, Ohio.

The defendant Lumbermens Mutual Insurance Company was the insurance carrier for the Hayes family under its standard "Family Combination Automobile" policy. The defendant Auto Owners Mutual Insurance Company was the insurance carrier for Miller under its standard "Garage Owners Liability" policy.

This matter was tried to the court on the 25th day of November 1960, on the supplemental petition of the plaintiff, a jury having been waived, and judgment was awarded the plaintiff against The Lumbermens Mutual Insurance Company on the 19th day of December 1960. Judgment was rendered in favor of defendant Auto Owners Mutual Insurance Company. Thereafter, defendant, Lumbermens Mutual Insurance Company, instituted this appeal.

Following the accident, Lumbermens Mutual paid to the Hayeses, its insured, the amount of the damage to the Pontiac.

Defendant Auto Owners Mutual Insurance Company, in its answer, denies in its first defense that it owned the Pontiac at the time of the accident and, for its second defense, denies that its policy affords coverage on the Pontiac sold by its insured, Lee Miller Pontiac Agency, because of the exclusionary clause in its policy, which is as follows in Section VIII, Exclusions:

"This policy does not apply:
"* * *

"(h) To liability arising out of the ownership, maintenance or use of any automobile in the possession of a purchaser under any partial payment plan or purchasing plan, except as to the named assured."

For its third defense, Auto Owners Mutual Insurance Company says that there was no consideration for the insurance

contract between the driver and owner of the automobile involved in this accident and said Auto Owners Mutual Insurance Company.

For its fourth defense, Auto Owners Mutual Insurance Company says that there is no privity of contract between the owner and driver of the car involved in this accident and Auto Owners Mutual Insurance Company.

For its fifth defense, Auto Owners Mutual Insurance Company says that its assured, Lee Miller, exercised no control over the owner or the driver of the automobile involved in the accident and was not entitled to exercise any such control over its use, care and maintenance, and that there was no relationship of agency between the owner and driver and defendant's assured, Lee Miller.

For its sixth defense, Auto Owners Mutual Insurance Company says that the car was being used without the permission or consent of its assured, Lee Miller.

The answer of Lumbermens Mutual Insurance Company alleges that it issued a liability insurance policy to Donald Hayes which provides that as to a temporary substitute automobile or nonowned automobile its insurance shall be excess over any other valid and collectible insurance; that the Pontiac herein was, at the time of the accident, owned by the Lee Miller Pontiac Agency; and that Burns operated the vehicle with the knowledge and consent of the Lee Miller Pontiac Agency.

The trial court found in favor of plaintiff Randall Insurance Agency, Inc., and against the defendant The Lumbermens Mutual Insurance Company. The court found further in favor of defendant Auto Owners Mutual Insurance Company, and thereupon rendered judgment in favor of plaintiff, Randall Insurance Agency, Inc., against defendant Lumbermens Mutual Insurance Company for the sum of $466, and costs.

The errors assigned are that (1) the judgment of the trial court is contrary to law, and (2) that the judgment is against the manifest weight of the evidence.

The policy of Lumbermens Mutual Insurance Company is in evidence, which policy contains an agreement, under Part I, Liability—Coverage B:

''To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of in-

jury to or destruction of property, including loss of use thereof, hereafter called 'property damage' arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *.''

The policy provides further, in Part III, Other Insurance, that:

''The insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess over any other valid and collectible insurance.''

The policy provides further under Part I, Liability—Persons Insured:

''The following are insureds under Part I: (b) with respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permisssion of the named insured.''

Part I of the policy, under definitions, defines ''named insured'' as the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household.

The policy issued by Auto Owners Mutual Insurance Company to the Lee Miller Pontiac Agency agrees, Section 1—Insuring Agreements—B—Property Damage Liability:

''To pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property including the loss of use thereof caused by accident and arising out of the operations of the assured as described in this policy.''

Section 11 of this policy, under Definition of Operations—Division 1, Premises, Operations, Automobiles, provides:

''The operations under this division cover the ownership, maintenance, occupation or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations which are necessary or incidental thereto, and including the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for pleasure purposes of any automobile owned by or in charge of the named assured * * *.''

The policy provides further, in Section IV, Definition of Assured:

"The unqualified word 'assured' wherever used in coverages A, B, C and F and in other parts of this policy when applicable to these coverages included not only the named assured but also * * * any person while using an automobile covered by this policy and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named assured."

The policy provides also, in Section VIII—Exclusions:

"This policy does not apply: * * * (h) to liability arising out of the ownership, maintenance or use of any automobile in the possession of the purchaser under any partial payment or purchasing plan, except as to the named assured."

We must first determine who owned the Pontiac automobile at the time of the collision. We have carefully considered the cases cited in the briefs of counsel on this point and conclude that the controlling law upon the facts in the case before us has been stated by the Supreme Court in the case of *Brewer* v. *DeCant*, 167 Ohio St., 411, 415, wherein the court said:

"The line between ownership and nonownership of an automobile must be finely drawn. This court in its most recent decisions, in interpreting Section 4505.04, Revised Code, has drawn that line at the issuance of a certificate of title. Until such time as a certificate of title is issued to a purchaser, no title to the automobile passes to him."

Paragraph three of the syllabus of that case holds that:

"Where a purchaser contracts to buy an automobile and takes possession thereof from an automobile dealer and uses the automobile, such use is a use with the permission of the dealer until such time as a certificate of title thereto is issued to the purchaser."

Lumbermens Mutual argues that, by virtue of the provisions of its policy, Part III, Other Insurance, Auto Owners Insurance Company is primarily liable for the satisfaction of the claim of Randall Insurance Agency, Inc.

Any use of the Pontiac automobile by Mrs. Hayes after the deal had been closed would be a use with permission of Lee Miller Pontiac Agency under the holding of the *Brewer* v. *DeCant* case. Here, the use of the Pontiac at the time of the collision

was by Tommy Burns, her son. Auto Owners denies that its assured, Lee Miller Pontiac Agency, permitted Tommy Burns to use the automobile.

It is in evidence in the record before us that before the deal was made, Burns had called at the Pontiac agency and that he was present with his mother, Mrs. Hayes, and his stepfather, Mr. Hayes, when the transaction took place. It is in evidence that a Ford automobile, titled in Tommy Burns, was traded in on the Pontiac. It is in evidence, too, that Burns drove the Pontiac away after the deal was closed, although Miller disclaims knowledge of this latter. Miller testified that Burns had been in before the transaction took place. Miller testified that title to the Ford was in Mrs. Hayes. Mrs. Hayes and her husband, Donald Hayes, testified that title was in Burns. Hayes testified further that the Ford automobile was insured and that he thought that the insurance was in the name of Burns. The evidence clearly supports only one conclusion, and that is that Miller knew that the Hayes' were buying the Pontiac for the use of Burns and that he knew when he let the car leave the premises that it was to be used by him.

Auto Owners policy, Section II, Division 1, provides:

"The operations under this division cover the * * * and the use for pleasure purposes of any automobile owned by or in charge of the named assured * * *."

Thus, Auto Owners is primarily liable, unless liability is excluded by Section VIII—Exclusions in its policy, which provides as follows:

"This policy does not apply:
"* * *

"(h) To liability arising out of the ownership, maintenance or use of any automobile in the possession of a purchaser under any partial payment plan or purchasing plan, except as to the named assured."

The Pontiac automobile was put by the Lee Miller Pontiac Agency into the possession of a purchaser, Eleanor Hayes. It was placed in her possession upon the payment of $1,553 of the purchase price of $1,653. The balance of $100 was carried by the Miller agency on an open account. None of the usual installment payment plans is involved here. Lumbermens argues that the words, "Under a partial payment or purchasing plan,"

used by Auto Owners in its policy obviously contemplates a long-term monthly payment arrangement secured by a mortgage to the seller or his agent on the vehicle sold. The words used, ''under any partial payment or purchasing plan,'' do not necessarily contemplate the usual long-term installment payment plan with accompanying mortgage. We hold that the payment plan adopted by the Lee Miller agency and the Hayes' is a purchasing plan within the meaning of the words used in Auto Owners policy, Section VIII—Exclusions, and that Auto Owners has no liability thereunder.

The Pontiac was a nonowned automobile at the time of the collision insofar as the Hayes' and Lumbermens are concerned. The operator, Burns, is the son of Mrs. Hayes, who is the spouse of Donald Hayes, Lumbermens insured named in Item I of the Declarations, and Mr. and Mrs. Hayes are living together in the same household. In Part I—Liability—Coverage B—Property Damage, Lumbermens policy agrees to pay on behalf of the insured all sums the insured shall be obligated to pay as damages to property arising out of the use of any nonowned automobile. Burns is an insured under Lumbermens policy because he is a relative of a named insured, Mrs. Hayes. See Part I—Liability—Persons Insured (b) and Definitions under Part I: Named Insured.

We have carefully considered appellant's assignments of error and find no merit therein. The trial court's judgment is sustained by sufficient evidence and is not contrary to law. While we do not agree with the trial court's reasoning in arriving at the judgment, the judgment is correct.

Finding no error in the record prejudicial to the rights of appellant, the judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and KERNS, J., concur.