George Maurice **HAMILTON** and Barbara Jane Lawson, Appellants,

v.

**MARYLAND CASUALTY COMPANY,** Appellee.

No. 22833.

United States Court of Appeals
Fifth Circuit.

Nov. 17, 1966.

William H. Roundtree, George Ritchie, Cocoa, Fla., for appellants.

Rodney G. Ross, Maguire, Voorhis & Wells, Orlando, Fla., for appellee.

Before BROWN, GEWIN and GOLD-BERG, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Another of that ever-growing list [1] of intramural insurance Donnybrooks which, as local disputes over the local reading of a local contract with no federal overtones, constitutional, statutory or otherwise, could better be left to local courts to resolve,[2] it seems the better part of judicial wisdom to bring this to an end without postponing the evil day of decision. Guillot v. Cenac Towing Company, Inc., 5 Cir., 1966, 366 F.2d 898. Helpful as is the Florida Supreme Court reference procedure,[3] especially in areas which present alternative governmental or social policy choices even though ostensibly garbed in the austere form of an insurance policy,[4] we think the question here is the simple one whether the insurance contract says what it means and means what it says. Jacksonville Terminal Co. v. Florida East Coast Railway Co., 5 Cir., 1966, 363 F.2d 216, at 220. If it does—and we hold that it does—the District Court was clearly correct and should be affirmed. In construing what is euphemistically called the Family Automobile Policy only one real question specifically arises: is a brother-in-law living in the same

1. One discerning authority and indefatigable writer describes it thus. "The romance, such as it is, of good, bad, and indifferent, decisions on automobile coverage decisions proceeds with ever increasing acceleration. In the 21-year period from 1936 through 1956, the courts of this country reported 1,443 decisions on automobile coverage questions, averaging about 70 each year. In 8½-year period from 1957 through the first six months of 1965 they decided some 2,100 such cases, averaging about 247 each year. The present rate is over 300 each year." Risjord, 1964–1965 Highlights of Automobile Liability Insurance Law, 16 Fed.Ins.Counsel Quarterly, Winter 1965–66, p. 6 [hereinafter referred to as "Highlights" with appropriate year].

2. Judge Sobeloff recently sounds the tone of wonderment. "This controversy between two insurers is here because of the singular fascination the federal diversity forum holds for insurance companies, even when the controlling state law question has not been clearly settled and only a state court can give an authoritative answer." Travelers Ins. Co. v. Employers' Liability Assurance Corp., Ltd., 4 Cir., 1966, 367 F.2d 205.

3. Hopkins v. Lockheed Aircraft Corp., 5 Cir. 1966, 358 F.2d 347, and the certification cases there cited. See also Kaplan, Certification of Questions from Federal Appellate Courts to the Florida Supreme Court and Its Impact on the Abstention Doctrine, 16 U.Miami L.Rev. 413 (1962).

4. Nowhere is this more spectacularly evident than in the diametrically conflicting readings of a uniform, simple, common standard policy clause by states separated only by imaginary political boundaries. Consider, for example, " * * * the running, ceaseless controversy over 'Who Is The Insured?' on which courts have differed and continued to divide so sharply." Great Am. Ins. Co. v. General Acc. Fire & Life Assur. Corp., 5 Cir., 1963, 321 F.2d 948, 951. Judges, too, can be mesmerized by the easy catch phrases in the quest for the intention of the parties, only to recognize that what counts is not what the parties really intended, but what the local law spoken through its judiciary declares the parties to have meant. See American Agricultural Chem. Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856, 861 & n. 4 (concurring opinion). In construing the "employee exclusion" of nearly all standard liability policies, it may be an ironic man-bites-dog-reversal of form that courts, long accustomed to a liberal reading of coverage and a restrictive reading of exclusions where any doubt exists, continue to deny coverage which the underwriters intended to extend, or at least those close to the heart and voice of underwriters say they intended to extend. See Risjord & Austin, Who Is "The Insured" Revisited, 28 Ins. Counsel J. 100 (Jan.1961); Risjord, 1961 Highlights, 12 Fed.Ins.Counsel Quarterly, Spring 1962, pp. 55–56; 1962–1963 Highlights, 14 Fed.Ins.Counsel Quarterly, Spring 1964, pp. 41–44; 1964–1965 Highlights, 16 Fed.Ins.Counsel Quarterly, Winter 1965–66, pp. 33–35; Brown & Risjord, Loading and Unloading: The Conflict Between Fortuitous Adversaries, 29 Ins. Counsel J. 197, 207–11, 216. Presumably despairing that the severability clause would ultimately produce a favorable countdown, a substantial segment of the underwriting industry has solved it in the Family Automobile Policy by words which defy much judicial tinkering: " 'Insured' means the person against whom claim is made or suit is brought."

household as the sister-in-law a relative? Once that is answered the only problem remaining is whether there is any justifiable basis for disregarding the plain words of the contract.

The facts neither complex nor conflicting can be severely capsulated. As with another family, this, too, begins in the beginning. Patterson v. Thomas, 5 Cir., 1961, 289 F.2d 108, 117 (dissenting opinion). Margie Frye, the Assured, lived in the same household with McElroy Lawson and Mrs. McElroy Lawson, the sister of Margie Frye. Barbara Jane Lawson, the daughter of the McElroy Lawsons, was obviously Miss Frye's niece. While driving her father's automobile, Barbara injured the Damage Claimant, George Hamilton. The Damage Claimant, Hamilton, not unnaturally, pursues the Insurer to secure satisfaction of the judgment he has against Barbara who as co-plaintiff and co-appellant is now aligned with her former adversary, likewise a not uncommon con-

temporary development dictated by self-interest, morality, or a combination of both. See, Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525; Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 337 F.2d 223; Seguros Tepeyac S.A., Compania Mexicana v. Bostrom, 5 Cir., 1965, 347 F.2d 168. It highlights the significant questions to likewise capsulate the District Court's action. The District Judge held that McElroy Lawson, a brother-in-law of the Assured, was a relative. This had the effect of denying coverage under the exclusion for a non-owned automobile if owned by a relative residing in the same household with the Assured.

This Family Automobile Policy presumably on the 1958 revised form afforded, and was intended to afford, broad and liberal coverage both as to persons known and unknown and vehicles known and unknown.[5] The changes wrought by the 1963 revision are of no significance here.[6] Of critical importance, the

5. The policy had the usual Part 1 coverage A and coverage B, bodily injury, death, property damage. This extended the coverage to "the insured." The policy defined "insureds" as follows:
"Persons Insured
"The following are insureds under Part 1:
"(a) With respect to the owned automobile,
"(1) the named insured and any resident of the same household,
"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
"(b) With respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative, but only with respect to a private passenger automobile or trailer,
provided the actual use thereof is with the permission of the owner;
"(c) Any other person or organization legally responsible for the use of
"(1) an owned automobile, or
"(2) a non-owned automobile, if such automobile is not owned or hired by such person or organization, provided the actual use thereof

is by a person who is an insured under (a) or (b) above with respect to such owned automobile or non-owned automobile."
See Risjord & Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix, pp. 54, 57-58; see pp. 33, 34-38 for 1956 Form.

6. "Persons Insured
"The following are insureds under Part I:
"(a) With respect to the owned automobile,
"(1) the name insured and any resident of the same household,
"(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and
"(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;
"(b) with respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual

significant terms of the clauses describing the assureds such as "relative," "owned automobile," and "non-owned automobile" were specifically defined.[7] As to these the 1963 revision[8] also made some changes, none significant here.

 Since the accident was caused by an automobile other than the one owned by the Assured, Aunt Margie, both as to coverage[9] and the persons insured (see note 5, supra, Par. (a) (1) (2)), the re-

> operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and
>
> "(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b) (1) or (2) above."

Id. at 181, 184–85.

7. " 'named insured' means the individual named in Item 1 of the declarations and also includes the spouse, if a resident of the same household;

" 'insured' means a person or organization described under 'Persons Insured';

" 'relative' means a relative of the named insured who is a resident of the same household;

" 'owned automobile' means a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;

" 'private passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile."

Id. at 58.

8. The terms "named insured," "insured," "non-owned automobile," and "private passenger automobile" are identical. There is a marked change in the definition of "owned automobile":

" 'owned automobile' means

"(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

sult depends on whether Barbara's father's car was a "non-owned automobile" (note 5, supra, Par. (b) (1) (2)) as the policy defines it. (Note 7, supra). It simplifies the problem to reconstruct the definition clauses into an amalgam of "relative" and "non-owned automobile." It then reads:

" 'Non-owned automobile' means an automobile * * * not owned by * * * either the named insured

> "(b) a trailer owned by the named insured,
>
> "(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
>
>> "(1) it replaces an owned automobile as defined in (a) above, or
>>
>> "(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or
>
> "(d) a temporary substitute automobile;

" 'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative other than a temporary substitute automobile; * * *."

Id. at 185–86.

9. "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. [bodily injury]; B. [property damage]; * * * arising out of the ownership, maintenance or use of *the owned* automobile or *any non-owned* automobile * * *." (Emphasis added.)

See Id. at 56.

or any relative of the named insured who is a resident of the same household * * *."

The possible points of controversy are thus quickly and sharply reduced. The car was not owned by Aunt Margie, the named Assured. But just as positively, it was owned by Barbara's father. Equally clear, and unlike so many cases where the very vexing factual problem is whether the "relative" is a resident of the household,[10] Barbara's father was a part of this household.

■ All that is left, therefore, is the question whether a brother-in-law of the named Assured is a "relative." And on that score we have no doubt that within the context of this broad coverage, he is so. The role of the Court is perhaps fortunately easier since the term is a neutral one in the sense that to be a relative is, on occasions, the status which affords insurance coverage, while in others the status works an exclusion of coverage.[11] The sauce ought therefore to be for insurer and assured alike. In a policy which extends insurance to persons whose age, sex, physical, mental competence and moral responsibility are completely unknown and covers vehicles of unknown age, vintage, operability, mechanical condition or ownership, there is no place for a narrow reading of "relative." Stated in operational terms, not the legalism of wills, trusts, estates, and conveyancing, any attempt, as urged here, to read into it distinctions between affinity and consanguinity would thwart the intended breadth of the coverage as well as the reflext exclusions which are essential to prevent abuses.

For Florida we make such an *Erie* alignment.[12] For Florida we reject the notion that "relative" is ambiguous.[13]

10. See, e.g., American Cas. Co. of Reading, Pa. v. Crook, 1961, S.D.W.Va., 197 F.Supp. 345, affirmed 4 Cir., 1962, 301 F.2d 846 (Risjord & Austin Case No. 2340) [hereinafter cited as R & A]; Simon v. Milwaukee Auto. Mut. Ins. Co., 1962, 262 Minn. 378, 115 N.W.2d 40 (R & A 2491); Hardware Mut. Cas. Co. v. Home Indem. Co., 1966, Cal.App., 50 Cal. Rptr. 508 (R & A 3866); Aetna Cas. & Sur. Co. v. Means, N.D.Okl., 1966, 255 F.Supp. 455 (R & A 3999); Doern v. Crawford, 1966, 30 Wis.2d 206, 140 N.W. 2d 193 (R & A 3802); Giese v. Karstedt, 1966, 30 Wis.2d 630, 141 N.W.2d 886 (R & A 3897); Fruchtman v. State Farm Mut. Auto. Ins. Co., 1966, 274 Minn. 54, 142 N.W.2d 299 (R & A 3905); Hardesty v. State Farm Mut. Auto. Ins. Co., 10 Cir., 1966, 361 F.2d 176 (R & A 3955). The latter case perhaps adds some semantical wrinkles. Even in a monogamous society, a person may be a member of more than one household and under a single roof there may exist more than one household. At this stage for that vast "unknown" underwriting is pure guess work except for a possible hope that for relatives as with birds (and words), those of a feather flock together. Roe v. United States, 5 Cir., 1963, 316 F.2d 617, 623.

11. In the first group of cases, "relative" status either was required to obtain, or it precluded, coverage: Goens v. Arinder, 1964, 248 Miss. 806, 161 So.2d 509 (R & A 3083); Fidelity & Cas. Co. of New York v. Jackson, 4 Cir., 1961, 297 F.2d 230, reversing E.D.N.C., 194 F.Supp. 431 (R & A 2302); American Cas. Co. of Reading, Pa. v. Crook, S.D.W.Va., 1961, 197 F.Supp. 345, affirmed 4 Cir., 1962, 301 F.2d 846 (R & A 2340); Taylor v. State Farm Mut. Auto. Ins. Co., La.Ct. App., 1965, 171 So.2d 816 (R & A 3400), affirmed 248 La. 246, 178 So.2d 238 (R & A 3647); Simon v. Milwaukee Auto. Mut. Ins. Co., 1962, 262 Minn. 378, 115 N.W.2d 40 (R & A 2491). In these injuries to a "relative" were excluded: Teems v. State Farm Mut. Auto. Ins. Co., 1966, 113 Ga. App. 53, 147 S.E.2d 20 (R & A 3826); Fruchtman v. State Farm Mut. Auto. Ins. Co., 1966, 274 Minn. 54, 142 N.W.2d 299 (R & A 3905).

12. Mother-in-law: Fidelity & Cas. Co. of New York v. Jackson, 4 Cir., 1961, 297 F.2d 230, reversing E.D.N.C., 194 F. Supp. 431 (R & A 2302); Uncle: Vernatter v. Allstate Ins. Co., D.C.Md., 1965, 240 F.Supp. 683 (R & A 3529); Daughter-in-law: Liprie v. Michigan Millers Mut. Ins. Co., La.App., 1962, 143 So.2d 597 (R & A 2566); Stepson: cf. Randall Ins. Agency, Inc. v. Burns, 1961, 115 Ohio App. 397, 185 N.E.2d 309, 93 A. L.R.2d 1041 (R & A 2595); Pacific Ins. Co. of New York v. Fireman's Fund Ins. Co., S.C., 1966, 147 S.E.2d 273 (R & A 3850); Daughter: White v. Nationwide Mut. Ins. Co., W.D.Va., 1965, 245 F.Supp. 1 (R & A 3658).

13. See note 13 on page 773.

There this case would end without more were it not for the contention alternatively asserted but pressed almost as the main argument that Barbara qualifies under Par. (c) (2) (note 5, supra) as a "person * * * legally responsible for the use of * * * (2) a non-owned automobile."

As near as we can discern it, two arguments seem to be made. The first is that unless Par. (c) (2) is given this reading, it is superfluous and serves no need not encompassed by Par. (b) (2). The second is that the proviso clause of Par. (c) (2)—" * * * if such automobile is not owned * * * by such person" in effect reads out the general definition of a non-owned automobile (note 7, supra) so that the only limitation is that (1) the automobile not be owned by the named assured (here Aunt Margie) and (2) that it not be owned "by such person" (here Barbara). Amplifying this it is urged that "owned automobile" and "non-owned automobile" are mutually exclusive terms and the Insurer ought not to be permitted to distort simple words by the policy's special definitions.[14] We find none of these arguments persuasive.

As to the first, there are a number of functions for Par. (c) (2) not encompassed within Par. (b) (2) including a wide range of situations in which liability is imputed to a third person on familiar principles of respondeat superior, or the like,[15] because of the operation of a non-owned vehicle by a relative living in the same household. In practically none of these situations could "such person" qualify under either (a) or (b).

As to the second, rather than detracting from the general definition the proviso clause adds a further limitation. The automobile must not only meet the general definition of one not owned by, or regularly furnished for the use of, a relative residing in the same household. Additionally it must not either be owned or hired by "such person or organization." This purpose seems clear from the fact that Par. (c) (2) expressly requires that the party for whom such "other person or organization" has a legal liability must have the status of an assured under Par. (a) or (b). And with respect to Par. (b) this brings into play the composite definition of "relative" and "non-owned automobile."

None of the other contentions warrant any comment.

Affirmed.

13. With this falls such cases as Indiana Lumbermen's Mut. Ins. Co. v. Passalacqua, 27 Misc.2d 405, 208 N.Y.S.2d 1006 (1960); 30 Misc.2d 626, 211 N.Y.S.2d 62 (1961) (R & A 2157); Juzefski v. Western Cas. & Sur. Co., 1959, 173 Cal.App. 2d 118, 342 P.2d 928 (R & A 1850); Travelers Indem. Co. v. Pray, 6 Cir., 1953, 204 F.2d 821, affirming Pray v. Leibforth, E.D.Mich., 1952, 106 F.Supp. 613 (R & A 877).

14. Here they naturally echo the dissenting opinion of Justice Cohen in Carr v. Home Indem. Co., 404 Pa. 27, 170 A.2d 588, 83 A.L.R.2d 922 (1961) (R & A 2266).

15. The most spectacular are cases giving the United States the benefit of a government employee's privately acquired insurance despite the ameliorative amendments to the FTCA, 28 U.S.C.A. § 2679(b) (e). See United States v. Myers, 5 Cir., 1966, 363 F.2d 615 (R & A 4045) and the extensive list of cases cited therein; also Government Employees Ins. Co. v. United States, 10 Cir., 1965, 349 F.2d 83 (R & A 3636). Other typical situations are: the employer of the named assured, Maryland Cas. Co. v. Marquette Cas. Co., La.App., 1962, 143 So.2d 249 (R & A 2565); lessee as employer of driver, Helvy v. Inland Mut. Ins. Co., 1963, 148 W.Va. 51, 132 S.E.2d 912 (R & A 2946); Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., Tex., 1965, 387 S.W.2d 22 (R & A 3417), reversing Tex.Civ.App., 1964, 376 S.W.2d 821 (R & A 3112).