**Wilma Irene GREER, Appellant,**

v.

**ASSOCIATED INDEMNITY CORPORATION, Appellee.**

No. 22844.

United States Court of Appeals
Fifth Circuit.

Jan. 6, 1967.

---

Wm. H. Roundtree, Cocoa, Fla., for appellant.

Eugene L. Roberts, Rockledge, Fla., William M. Howell, Jacksonville, Fla., Howell, Kirby, Montgomery, Sands & D'Aiuto, Rockledge, Fla., for appellee.

Before BROWN, GEWIN and GOLD-BERG, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

As with another recent case, Hamilton v. Maryland Cas. Co., 1966, 5 Cir., 368 F.2d 768, this adds to the list of insurance controversies in which the parties, most frequently the insurers, Travelers Ins. Co. v. Employers' Liability Assur. Corp., Ltd., 1966, 4 Cir., 367 F.2d 205, flee from the state forum to litigate their local, non-federal claims in the Federal Courts.

██ What—and all—that is involved is the construction of the terms of an insurance policy as to which we are *Erie*-Florida bound. Indeed, we can think of no more local an *Erie*-problem than construction of the provisions of an insurance contract, a judicial process in which public policy factors frequently assume extraordinary importance, so much so as to produce diametrically opposite judicial "constructions" of uniform identical policy clauses. Hamilton v. Maryland Cas. Co., 1966, 5 Cir., 368 F.2d 768, 769 at n. 4; American Agricultural Chem. Co. v. Tampa Armature Works, Inc., 1963, 5 Cir., 315 F.2d 856, 861–862 (concurring opinion). Pointing as such considerations do toward utilizing—as we have done often in the past [1]—the salutary provisions for certification to the Florida Supreme Court,[2] we think such circuity unnecessary and, hence, inadvisable here. There is simply no room for doubt as to the required result. We read the *Erie* signal loud and clear with no need for amplification.

The issue here presented is whether the Insurer under a Family Automobile Policy insuring two specified automobiles at specified different premium rates is liable for sums exceeding the stated limits of liability ($10,000) per automobile where only one of the insured automobiles is involved in the accident giving rise to the claim. For reasons hereinafter discussed, we hold that it is not and affirm the District Court's judgment.

The facts are simple and may be quickly stated. In June 1963, the Insurer issued a Family Automobile Liability Policy to the Assured, John R. Workman (and wife) specifically covering their two Ford automobiles, a convertible and a Falcon. Shortly thereafter, the Assured's son (John), who resided in the same household with his father, lost control of the convertible and collided with the automobile driven by Miss Greer, the Damage Claimant. The other insured automobile (Falcon) was in no way involved in the accident. As a result of the accident, the Damage Claimant sustained personal injuries and damage to her automobile. She brought a suit against the son in the Florida State Court and recovered judgment in the sums of $35,100 for her personal injuries, $1,300 for property damage, and $605.18 costs. She then instituted this action in the Florida State Court against the Insurer asserting that although the policy

---

1. Clay v. Sun Ins. Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, rev'd, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229; Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70, on rehearing, 304 F.2d 85, on certification, Fla., 1963, 154 So.2d 169, on receipt of answers to certification, 5 Cir., 1963, 325 F.2d 673, cert. denied, 1964, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306. Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347.

2. Fla.Stat. § 25.031, F.S.A. (1965); Fla. Appellate Rules 4.61, 31 F.S.A.

purported to limit liability for bodily injuries to a maximum of $10,000 per person, since it insured two automobiles, the Insurer was liable up to $20,000 for bodily injuries. The Insurer acknowledged liability for the property damages and costs, and for personal injuries in the sum of $10,000, and paid the Damage Claimant these sums in partial satisfaction of her judgment. The action then proceeded on the claim for $10,000 additional coverage.[3] Thereafter, the Insurer removed the case to the United States District Court on grounds of diversity. Subsequently both parties moved for summary judgment. On February 22, 1965, the Insurer's motion was granted. This appeal followed.

The policy appears to be the standard [4] 1958 form Family Automobile Policy except for an amendatory endorsement. It extended broad coverage for personal injuries arising out of the operation of "the owned automobile," [5] to a wide group of omnibus assureds [6] under suitable policy definitions.[7] The limits of liability [8] were expressly defined with a Separability Clause [9] where the policy specifically covered more than one automobile. Although most of the amendatory endorse-

---

3. In a second count the Damage Claimant charged the Insurer with bad faith in failing to settle for her pretrial demand of about $20,000 for her personal injuries. She sought to recover the entire $37,005.18 verdict. This second count, however, is not before us.

4. See Risjord & Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix, p. 54 (1964).

5. "Coverage A—Bodily Injury Liability;
"* * * *
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
"A. bodily injury, sickness, or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;
"* * * *
"arising out of the ownership, maintenance or use of *the owned* automobile or any non-owned automobile * * *."
(Emphasis added.)

6. "Persons Insured
"The following are insureds under Part I:
(a) With respect to the owned automobile,
   (1) the named insured and any resident of the same household,
   (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
(b) With respect to a non-owned automobile,
   (1) the named insured,
   (2) any relative, but only with respect to a private passenger automobile or trailer,
provided the actual use thereof is with permission of the owner."

7. "Definitions
"Under Part I:
'named insured' means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household;
* * *
'relative' means a relative of the named insured who is a resident of the same household;
'owned automobile' means a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;
* * *
'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;
'private passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile;
* * *."

8. "Limits of Liability
"The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all damages, * * * arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, * * *, the total limit of the Company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence."

9. "Two or More Automobiles ["Separability Clause"]
"When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an

ment incorporating changes made in the 1963 standard form are of no moment here,[10] there is an important, if not decisive, change in the definition of "owned automobile" which ties it to the automobile [1] described in the policy[11] and ▮ for which a premium is specified.

The parties are in agreement in urging that the single insurance policy insuring two automobiles but charging a separate premium for each and containing a "separability clause"[12] provides the coverage and should be interpreted as though separate policies had been issued for each automobile. We must therefore determine the status of the Assured, John, under the terms of the policy which relate to the automobile that was *not* involved in the accident.

In order to derive any benefit from the policy, the Damage Claimant must rely on the coverage afforded the Assured while driving an "owned automobile," since both of the automobiles involved in the present dispute were "owned by the named insured."

So far as we can divine it, and in the most favorable structure possible, the Damage Claimant's argument presumably proceeds along these lines. Son John is clearly an Assured with respect to an "owned automobile" because he is a "resident of the same household" as the named insured (par. (a) (1), note 6, supra). Further, the definition of "owned automobile" is broad enough to include any and all automobiles owned by the named Assured (note 11, supra). Since the Damage Claimant secured a judgment for bodily injuries "arising out of the ownership * * * or use of" an owned automobile (note 5, supra), there is nothing limiting coverage to the involved automobile so the Insurer is also liable under the policy terms covering the non-involved automobile. Alternatively, the insuring clause referring to "owned automobile" is ambiguous and could be construed to cover not only the involved automobile but also the non-involved automobile. Therefore, under the cases holding that ambiguous terms must be construed in favor of the Assured,[13] the Damage Claimant is entitled to prevail.

This argument—if otherwise sound, and the if is a big one—ignores the changes made in the policy terms by the

---

automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Part I of this policy, and separate automobiles under Part III of this policy, including any deductible provisions applicable thereto."

10. The 1963 amendment made no changes in the policy relating to coverage, limitation of liability, or separability where two or more automobiles are covered. Changes were made in the Persons Insured which had the effect of broadening coverage, see Risjord & Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix at 57–58 (1958 Family Automobile Policy), 184–85 (1963 Family Automobile Policy), but these changes do not affect the present appeal.

11. We have inserted the numbers in brackets [1] [2].

" 'owned automobile' means

"(a) a private passenger, farm or utility automobile [1] *described in this policy* [2] *for which a specific premium charge* indicates that coverage is afforded,

"(b) a trailer owned by the named insured,

"(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided

"(1) it replaces an owned automobile as defined in (a) above, or

"(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile * * *." *Id.* at 181, 184.

12. See note 11, supra.

13. Auto-Owners Ins. Co. v. Palm Beach County, 1963, Fla.App., 157 So.2d 820, 823; Bennett v. Fidelity & Cas. Co., 1961, Fla.App., 132 So.2d 788, 792; Peninsular Life Ins. Co. v. Rosin, 1958, Fla.App., 104 So.2d 792, 794–795; see 18 Fla.Jur., Insurance § 94.

1963 amendments in the definition of "owned automobile" (note 11, supra). As pointed out by the Insurer, the insuring agreement (note 5, supra) specifies that the injury must be caused by *"the* owned automobile," (emphasis added). Under the amendatory endorsement forming a part of this policy, this means "a private passenger * * * automobile [1] described in this policy [2] for which a specific premium charge indicates that coverage is afforded * * *." Far from aiding her, the Damage Claimant's separability argument now compels a holding adverse to her claim. Applying the separability concept, the provisions of the theoretical "separate policy" insuring the noninvolved automobile could not possibly be interpreted to extend coverage to the Damage Claimant, because her injuries did not arise as the result of the "ownership, maintenance, or use of *the* owned automobile * * * [1] *described in this policy * * *"* and "[2] for which a specific premium charge" is made. (Emphasis added.)[14]

The Court in *Thompson,* note 14, supra, on facts almost identical to ours, reached the same result without relying on the 1963 amendments. The Court held that the separability clause "merely assures the applicability of the policy to whichever car is involved in an accident, or to all cars, and does no more." 56 Wash.2d 715, 355 P.2d at 12. Whatever doubt there might have been—and we intimate none—all has been removed by the 1963 changes.

As far as we are concerned, no help comes from Loerzel v. American Fidelity Fire Ins. Co., Sup.Ct. Ulster Co., 1952, 204 Misc. 115, 120 N.Y.S.2d 159 (R&A 864). In an unrevealing opinion there is some indication that both trucks were physically involved in the accident[15] and, in any event, apparently both trucks were present at the scene of the accident. If both were causally involved from an operational standpoint, coverage existed for both. If not, the decision is, in our judgment, unsound and for Florida, we decline to follow it.

Nor can the Damage Claimant find any comfort in the medical payments cases where, under a policy insuring two or more automobiles, recovery in excess of the maximum limit of liability where a single amount is specified, or in excess of the maximum for the "involved automobile" where there are different limits of liability for the insured automobiles, is almost uniformly allowed.[16] This result, while roundly criticized by at least one discerning writer in the field of au-

14. See Pacific Indemnity Co. v. Thompson, 1960, 56 Wash.2d 715, 355 P.2d 12 (Risjord & Austin Automobile Liability Insurance Case No. 2068); Government Employees Insurance Company v. Lally, 4 Cir., 1964, 327 F.2d 568 (R&A 3065); see also Polland v. Allstate Insurance Company, 25 A.D.2d 16, 1965, 266 N.Y. S.2d 286 (R&A 3753). Unlike *Thompson* and *Lally, Polland* involved coverage where the accident was caused by the use of a "nonowned automobile." Nevertheless, in denying recovery in excess of the maximum limit of liability per automobile, the court was of the opinion that the separability clause "means nothing more than to render applicable the policy to whichever car insured under the policy is involved in an accident." We disclaim any purpose to determine or intimate the outcome had the son been driving a nonowned automobile.

15. The Court had this to say: "[T]his action was commenced by the plaintiff against the above named defendant, the insurance company, with which the aforesaid corporation had a policy of liability insurance covering the *trucks involved in the accident * * *"* and "[f]rom [the separability] provision it is apparent that this policy applied to each of the *two vehicles involved in this collision."* (Emphasis added.) 120 N.Y.S.2d at 161, 162.

16. Southwestern Fire & Cas. Co. v. Atkins, 1961, Tex.Civ.App., 346 S.W.2d 892 (no writ hist.) (R&A 2286); Kansas City Fire & Marine Ins. Co. v. Epperson, 1962, 234 Ark. 1100, 356 S.W.2d 613 (R&A 2484); Central Surety & Ins. Corp. v. Elder, 1963, 204 Va. 192, 129 S.E.2d 651 (R&A 2734); Travelers Indemn. Co. v. Watson, 1965, 111 Ga.App. 98, 140 S.E. 2d 505 (R&A 3404); Government Employees Ins. Co. v. Sweet, 1966, Fla.App., 186 So.2d 95 (R&A 3915). Contra: Sullivan v. Royal Exchange Assur., 1960, 181 Cal.App.2d 644, 5 Cal.Rptr. 878 (R&A 2032).

tomobile liability insurance,[17] does not seem unreasonable in view of the different terminology incorporated in the insuring agreement of the medical payments provisions which broadly extends coverage to automobile-produced injuries regardless of its ownership or status as insured or uninsured.[18] We may assume, without deciding, and as the recent cases seem to bear out that the 1963 amendments,[19] while altering the terminology of the medical payments section, do not appear to have significantly affected the broad coverage afforded. In these cases coverage is not narrowly circumscribed but rather the Courts consider that when analyzed in conjunction with the separability clause in a policy insuring two or more automobiles, broad coverage is afforded so the assured is entitled to recover up to the policy limits for both automobiles.

But for us we need not concern ourselves with the correctness of this approach to medical payment cases. For from Government Employees, Ins. Co. v. Sweet, 1966, Fla.App., 186 So.2d 95, 97, the latest and highest writing Court, Ford Motor Co. v. Mathis, 1963, 5 Cir., 322 F.2d 267, 269, 3 A.L.R.3d 1002, the *Erie* "lights here are bright, clear, and contemporary." Green v. Aetna Ins. Co., 1965, 5 Cir., 349 F.2d 919, 922. That Court expressly rejected the asserted analogy of the medical payment cases:

> "The medical payments coverage applies to all medical expenses of the named insured while occupying or through being struck by an automobile, except an automobile owned by or furnished for the regular use of the named insured which is not described in the policy. This is the feature which makes medical payments insurance coverage an entirely different type of insurance than public liability or property damage insurance where coverage is attributed to the vehicle causing the damage. Medical payments provisions are closely akin to a personal accident policy; recovery is completely independent of liability on the part of the insured."

Government Employees Ins. Co. v. Sweet, 1966, Fla.App., 186 So.2d 95, 97.[20]

■ The Insurer has discharged its obligation under the policy provisions to the Damage Claimant who can recover only for injuries caused by the insured automobile involved in the accident. No factual issue existed that would have warranted a jury trial, Summary judgment was therefore proper.

Affirmed.

---

17. Risjord, 1961 Highlights of Automobile Liability Insurance Law, 12 Fed.Ins. Counsel Quar. 41, 49 (Spring, 1962). See also the editorial comments appended to the cases cited in note 16, *supra*, briefed in Risjord & Austin, Automobile Liability Insurance Cases.

18. "To pay all reasonable expenses incurred within one year from the date of the accident for necessary medical, surgical, X-ray, and dental services * * * "Division 1. To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom * * * caused by accident, while occupying or through being struck by *an automobile*." (Emphasis added.) Risjord & Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix, p. 54, 62 (1964) (1958 Standard Family Automobile Insurance Policy).

19. "To pay all reasonable expenses incurred within one year from the date of the accident for necessary medical, surgical, X-ray and dental services * * * "Division 1. To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom * * * caused by accident, (a) while occupying the owned automobile, (b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has the permission of the owner to use the automobile and the use is within the scope of such permission, or (c) through being struck by an automobile or by a trailer of any type." Id. at 181, 191.

20. In view of the emphatic statements, the alternative holding of ambiguity does not water this down.